IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Yarus, | ) |
|       *Plaintiff*, | ) ) ) |
|     -vs- | ) No. _____ ) |
| City of Chicago and Chicago Police Officers Michael Durkin, Michael Flores, John Conneely, and Gina Mata | ) *(jury demand)* ) ) ) ) |
|       *Defendants*. | ) ) |

## COMPLAINT

Plaintiff, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 and § 1367.

2. Plaintiff Robert Yarus is a resident of the Northern District of Illinois.

3. Defendants Chicago Police Officers Michael Durkin, Michael Flores, John Conneely, and Gina Mata were, at all relevant times, acting under color of their office as Chicago police officers. Plaintiff sues these defendants in their individual capacities.

4. Defendant City of Chicago is an Illinois municipal corporation.

5. On May 29, 2018, defendants Durkin, Flores, and Conneely arrested plaintiff.

6. At the time they arrested plaintiff, defendants Durkin, Flores, and Conneely:

    a. Did not have a warrant authorizing plaintiff's arrest;

    b. Did not believe that a warrant had been issued authorizing the arrest of plaintiff;

    c. Had not observed plaintiff commit any offense; and

    d. Had not received information that plaintiff had committed an offense.

7. Before arresting plaintiff, defendants Durkin, Flores, Conneely, and Mata conspired, confederated, and agreed to frame plaintiff for a purported burglary allegedly committed on May 24, 2018 at the home of defendant Mata.

8. In furtherance of the conspiracy, the individual defendants concocted the false story that plaintiff had been identified as the person who had committed the purported burglary.

9. Defendants published this fabricated story in official police reports and in criminal complaints and communicated it to prosecutors.

10. The above described wrongful conduct of defendants Durkin, Flores, Conneely, and Mata caused plaintiff to be charged with a criminal offense and held in custody until July 26, 2018.

11. The criminal case brought against plaintiff was dismissed for reasons consistent with his innocence.

12. At all times relevant, the City of Chicago has known and has encouraged a "code of silence" among its police officers.

13. As summarized by the United States Department of Justice in its official report entitled "Investigation of the Chicago Police Department," January 13, 2017, at 75:

   a. "One way to cover up police misconduct is when officers affirmatively lie about it or intentionally omit material facts."

   b. "The Mayor has acknowledged that a 'code of silence' exists within CPD, and his opinion is shared by current officers and former high-level CPD officials interviewed during our investigation."

   c. "Indeed, in an interview made public in December 2016, the President of the police officer's union admitted to such a code of silence within CPD, saying 'there's a code of silence

everywhere, everybody has it . . . so why would the [Chicago Police] be any different.'"

14. The United States Department of Justice concluded that "a code of silence exists, and officers and community members know it." Report at 75.

15. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

16. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

17. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

18. On March 29, 2019, Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some

Chicago police officers "look the other way" when they observe misconduct by other Chicago police officers.

19. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, Superintendent Johnson, the Task Force, and the Department of Justice was also in place when plaintiff suffered the above-described wrongful arrest, detention, and prosecution.

20. The City's above described "code of silence" was a proximate cause of the actions of defendants Durkin, Flores, Conneely, and Mata to concoct the false story and fabricate evidence.

21. As a result of the foregoing, plaintiff was deprived of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States.

22. The above described acts constitute the Illinois tort of malicious prosecution for which the City of Chicago is responsible under the doctrine of respondeat superior.

23. Plaintiff hereby demands trial by jury.

WHEREFORE plaintiff requests that appropriate compensatory and punitive damages be awarded against defendants Durkin, Flores, Conneely, and Mata, that appropriate compensatory damages only be

awarded against defendant City of Chicago, and that the Court grant reasonable fees and costs.

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC No. 830399
Joel A. Flaxman
200 S Michigan Ave Ste 201
Chicago, IL 60604-2430
(312) 427-3200
*Attorneys for Plaintiff*